**MARSHALL ASSOCIATES, INC.**

v.

**LITE-TRONICS, INC.**

**Civ. A. No. 73-542.**

United States District Court,
W. D. Pennsylvania.

April 3, 1974.

J. Tomlinson Fort, William P. Hackney, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Lynch, Lynch & Carr, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

GOURLEY, District Judge.

In this civil non-jury proceeding, diversity jurisdiction and the required jurisdictional amount are present as well as jurisdiction premised on § 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa. Plaintiff, asserting fraud and misrepresentation by defendant, seeks rescission of a contract which it entered with defendant and the return of 2,500 shares of common stock of Rite-Lite Corporation sold to defendant. The Court has afforded the parties a full and complete trial and has considered the briefs and argument of counsel.

The facts may be briefly stated. Plaintiff, which is a holding company for the interests of Mr. J. Raymond Marshall, owned 50% of the stock of Rite-Lite Corporation, a manufacturer of incandescent decorative light bulbs made in the shape of candle flames. Defendant, through its representatives, first contacted plaintiff in connection with another business proposition. Although this matter did not materialize, it did lead to a series of meetings and negotiations regarding the possibility of plaintiff selling its 50% interest in Rite-Lite Corporation to defendant. This possibility became reality with an agreement executed by plaintiff and defendant on September 1, 1972, whereby Marshall sold its 2,500 shares of Rite-Lite in exchange for $25,000 cash and 37,500 shares of Lite-Tronics stock. This contract was accomplished as stipulated by the parties through the use, either directly or indirectly, of instrumentalities of interstate commerce.

Plaintiff contends that the representatives of defendant, throughout the negotiations leading to the contract, made statements which were false or misleading in violation of the Securities Act of 1934. The statements relate primarily to the value of the defendant's stock given as partial payment for the 2,500 shares of Rite-Lite Corporation.

Defendant contends, however, that J. Raymond Marshall, plaintiff's president and principal shareholder, was a sophisticated, knowledgeable, and highly informed individual with a great deal of experience in promoting, operating, and selling a number of companies in the lighting and electronics field. Defendant contends that Marshall had access to audited and unaudited financial statements of Lite-Tronics, which disclosed that said company was losing money. In addition, Marshall had been given a copy of the prospectus filed with the Pennsylvania Securities Commission on July 18, 1972, by which a Pennsylvania intrastate offer to sell 300,000 shares of defendant's stock was being made.[1] Defendant denies that any statement regarding the value of this stock was ever made to Marshall and that any decision regarding the stock's value had to come from Mr. Marshall's review of the prospectus he had been supplied.

■ Unquestionably, a most substantial dispute exists between the parties regarding the representations made by defendant's representatives to plaintiff's president. While Mr. Marshall is indeed an individual with exceptional experience in the area of creating and selling closely held corporations, the conclusion which the Court must reach is that various misrepresentations were made in violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.[2] Specifically, these misrepresentations included the following statements:

1. That there had been a substantial commitment for all or most of the 300,000 shares of defendant's stock to be sold as a Pennsylvania intrastate offering pursuant to the July, 1972, prospectus;

2. That there were well conceived plans for selling the balance of the stock and that defendant's representatives were dealing with various stock brokerage firms in Pittsburgh. (In fact, there was only one such firm which sold only 100 shares of stock);

3. That the defendant would raise one million dollars from the sale of this stock;

4. That the shares of stock plaintiff received were worth $4 per share.

■ Defendant's contention that its representatives did not assign a value of $4 per share to the Lite-Tronics stock deserves little credence. When Marshall attempted to arrange a loan using the stock as collateral, he was unsuccessful in this endeavor, finding the stock to be virtually worthless. Yet in negotiating the transaction, plaintiff had first asked

---

1. Of course the transaction under scrutiny here was not made on the basis of this prospectus since plaintiff is a Massachusetts citizen, but would be accomplished as an isolated sale exempt from registration under the Securities Act of 1933.

2. § 10(b) of the Securities Exchange Act of 1934 provides:

"§ 78j. *Manipulative and deceptive devices.*

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary

or appropriate in the public interest or for the protection of investors."

Rule 10b–5, 117 C.F.R. § 240.10b–5 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

for payment of $250,000 cash. Defendant countered with an offer of $100,000 cash which was rejected for the final arrangement of $25,000 cash and 37,500 shares of Lite-Tronics stock. The only fair inference which can be drawn from the final offer made and accepted is that it was meant to be less than $250,000, but more than $100,000. A good gauge of the intended value is an entry on the books and records of Lite-Tronics, Inc., showing the *value* of Rite-Lite stock purchased from plaintiff to be $175,000, composed of the $25,000 cash payment plus 37,500 shares of Litronics *valued* at $4 per share.

Under the circumstances, the Court believes that the $4 per share figure was represented as the stock's value, not merely its price. While the prospectus for the Pennsylvania intrastate sale clearly states that $4 per share was an arbitrary price, that statement must be coupled with the assertion that there was a substantial commitment for most of the shares being sold thereby. As a matter of fact, as stipulated by counsel, only 11,735 shares of Lite-Tronic Stock were sold through March, 1973. Thus there was no market for these shares, plans for selling them were certainly far from well formulated, and in effect, the shares of Lite-Tronics, Inc., sold to plaintiff were known by defendant to be virtually worthless.

The conclusion seems inescapable that had these statements regarding the value of Lite-Tronics stock not been made, the plaintiff would not have sold its interest in Rite-Lite Corporation. Although a drastic remedy, it is the considered judgment of the Court that rescission of the contract is the only appropriate relief under the circumstances here. The action for rescission is timely and has not been waived through any inaction by plaintiff. Adelman v. CGS Scientific Corporation, 332 F.Supp. 137 (E.D.Pa.1971); Baumel v. Rosen, 412 F.2d 571 (4th Cir. 1969).

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

### ORDER

And now, this third day of April, 1974, judgment with costs is hereby entered in favor of plaintiff and against defendant with the following specific provisions. The contract entered by the parties on September 1, 1972, is hereby rescinded. Plaintiff is directed to tender to defendant $25,000 in cash and the 37,500 shares of Lite-Tronics, Inc., stock received in exchange for 2,500 Rite-Lite Company shares of stock. Upon such tender, defendant is hereby directed to surrender to plaintiff the 2,500 Rite-Lite Company shares of stock.